Exhibit A:
Plaintiff's Original Petition in the State Court Action

2/4/2025 6:59 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96988574
By: Patricia Jones
Filed: 2/4/2025 6:59 PM

## 2025-07923 / Court: 270

### CAUSE NO. _____

| | | |
|---|---|---|
| **SHANTALACE HUMBLE** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **HARRIS COUNTY, TEXAS a/k/a** | § | |
| **HARRIS COUNTY SHERIFF'S** | § | |
| **DEPARTMENT, DEPUTY** | § | |
| **STEVEN LAMAR CARPENTER, JR.,** | § | |
| **In his Individual Capacity,** | § | |
| **DEPUTY OMAR A. RAMIREZ, In his** | § | |
| **Individual Capacity,** | § | |
| **DEPUTY ADRIAN T. MILLER, In his** | § | |
| **Individual Capacity, and DEPUTY** | § | |
| **BRYANT A. CRESPIN,  In his Individual** | § | |
| **Capacity** | § | |
| *Defendants* | § | **_____ JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION, NOTICE OF RULE 194 REQUIRED DISCLOSURES, AND REQUEST FOR JURY TRIAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Shantalace Humble files this Original Petition, Notice of Rule 194 Required Disclosures, and Request for Jury Trial complaining of the conduct of Defendants Harris County, Texas, a/k/a Harris County Sheriff's Department, Deputy Steven Lamar Carpenter, Jr., In his Individual Capacity, Deputy Omar A. Ramirez, In his Individual Capacity, Deputy Adrian T. Miller, In his Individual Capacity, and Deputy Bryant A. Crespin, In his Individual Capacity, and in support thereof would respectfully show this Court as follows:

Certified Document Number: 118802254 - Page 1 of 25

Certified Document Number: 118802254 - Page 2 of 25

# I.

## <u>INTRODUCTION</u>

1.    This is a civil rights case brought under 42 US.C. §§ 1983 and 1988 for the deprivation of Shantalace Humble's rights under the Fourth and Fourteenth Amended to the United States Constitution.

2.    On February 4, 2023, Harris County Sheriff's Deputy Carpenter implemented an illegal and improper traffic stop of Ms. Humble.  Ms. Humble made no attempt to flee, fight back, or resist.  She was unarmed with her two children in the vehicle.

3.    Ms. Humble asked why she was stopped, which angered and annoyed Defendant Carpenter.  Defendant Carpenter refused to inform Ms. Humble why she was stopped.  Ms. Humble informed Defendant Carpenter she suffered with anxiety, depression, post-partum depression, and PTSD for which she was prescribed medication.

4.    Defendant Carpenter became more annoyed and demanded Ms. Humble to exit the vehicle. She again asked why, no response.  Ms. Humble stated that she felt uncomfortable with Defendant's Carpenter's stop and asked for a supervisor.  Defendant Carpenter also demanded Ms. Humble's teenage son to get out of the vehicle.  Again, providing no reason for the stop or why she was required to exit the vehicle.

5.    When Ms. Humble exited her vehicle, Defendant Carpenter grabbed her arm behind her back and slammed her down to the ground.  Ms. Humble hit her head and was rendered unconscious.  Ms. Humble also sustained other physical injuries.  When she regained consciousness, she was lying prone on the ground, handcuffed, with her shirt down exposing her breasts.  Defendant Carpenter was kneeling on her back and another officer was holding her down.

At no time did she fight back, attempt to flee, or resist.  Defendant Carpenter viciously attacked Ms. Humble in front of her children and family for no reason.

6.  Ms. was never issued a citation or formally arrested after the incident. Defendant Carpenter filed an affidavit with the Harris County District Attorney's Office asserting that her wrongful conduct was she rolled up her window.  Charges were dismissed for lack of probable cause.

7.  Defendants' attack left Ms. Humble with a concussion, foot injury, and other bodily injuries. Even now, she continues to suffer serious and long-term mental and emotional consequences.

8.  Law enforcement is essential to public safety and security, especially in a county as large as Harris County.  However, law enforcement has important limits. Harris County Sheriff's Department states its policy is "The foundation of any organization is defined by its employees' honesty, moral standards, compassion, sincerity, and caring attitude."  "The mission of the Harris County Sheriff's Office is to enhance the safety and protect the trust of citizens of Harris County by enforcing the law with integrity and professionalism."

9.  Harris County has many divisions and districts employing thousands of officers who, for the most part, try to live up to that mission often in heroic fashion and at great risk to their own safety.  However, Harris County has a long history of injuries and death of citizens due to the use of excessive or deadly force often ignoring the mental health of the citizens with whom they interact. This pattern of reckless, unconstitutional conduct endangers our citizens, rather than protecting them.  It has allowed to grow into a subculture with no accountability and thrive for years through deliberate indifference by supervisors up the chain of command. Shantalace Humble deserved better.

Certified Document Number: 118802254 - Page 3 of 25

Certified Document Number: 118802254 - Page 4 of 25

## II.

## DISCOVERY CONTROL PLAN AND NOTICE OF REQUIRED DISCLOSURES

10.    Plaintiff requests this matter to be conducted under Level 3 Discovery Control Plan in accordance with Rule 190.4 of the Texas Rules of Civil Procedure.

11.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, notice is hereby provided that each Defendant is required to disclose the information and documents listed in Rule 194.2(b)(1)-(12) of the Texas Rules of Civil Procedure within thirty (30) days of the first answer or general appearance filed in this matter.

## III.

## PARTIES AND REQUEST FOR CITATION

12.    Plaintiff Shantalace Humble is a thirty-nine year old black woman and mother of two children. She is a resident of Harris County, Texas.

13.    Defendant Harris County, Texas ("Harris County") is a legally organized county and political subdivision under the laws of the State of Texas.  Harris County may be served with process by serving Harris County Judge Lina Hidalgo, 1001 Preston, Suite 911, Houston, Texas 77002 or wherever she may be found.

14.    Defendant Deputy Steven Lamar Carpenter, Jr. ("Deputy Carpenter") is a deputy with the Harris County Sheriff's Department.  He is a resident of Harris County, Texas and is sued in his individual capacity.  Deputy Carpenter can be served with process at his place of employment, Harris County Sheriff's Department, District 4, 16715 Clay Road, Houston, Texas 77084 or wherever he may be found.

15.    Defendant Deputy Omar A. Ramirez ("Deputy Ramirez") was at all relevant times a deputy with the Harris County Sheriff's Department.  Deputy Ramirez is currently a peace officer with

Harris County Constable Precinct 3. Deputy Ramirez is a resident of Harris County and is sued in his individual capacity. Deputy Ramirez can be served with process at this place of employment, Harris County Constable Precinct 3, 16635 Clay Road, Houston, Texas 77084.

16.    Defendant Deputy Adrian T. Miller ("Deputy Miller") is a deputy with the Harris County Sheriff's Department. Deputy Miller is a resident of Harris County and is sued in his individual capacity. Deputy Miller can be served with process at this place of employment, Harris County Sheriff's Department, District 4, 16715 Clay Road, Houston, Texas 77084

17.    Defendant Deputy Bryant A. Crespin ("Deputy Crespin") is a deputy with the Harris County Sheriff's Department.  Deputy Crespin is a resident of Harris County and is sued in his individual capacity. Deputy Crespin can be served with process at this place of employment, Harris County Sheriff's Department, District 4, 16715 Clay Road, Houston, Texas 77084

18.    Plaintiff requests the District Clerk of Harris County to issue Citation to Defendants identified in Paragraphs 14 through 17 above.  Pursuant to Rule 99(c) of the Texas Rules of Civil Procedure, the following language is required in each Citation: "In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org."

## IV.

## JURISDICTION AND VENUE

19.    Ms. Humble brings this action under the Fourth and Fourteenth Amendments to the United States Constitution, as authorized by 42 U.S.C. §§ 1983 and 1988. This Court has concurrent jurisdiction of Plaintiff's causes of action.

Certified Document Number: 118802254 - Page 5 of 25

20.     This Court has concurrent jurisdiction over Ms. Humble's claims under 28 U.S.C. § 1331 (action arising under the Constitution and federal law) and 28. U.S.C. § 1343(a)(action to redress deprivation of civil rights) and supplemental jurisdiction under 28 U.S.C. §1367(a), to hear Plaintiff's state law claims, if any.

21.     Venue is proper in Harris County, Texas because the cause of action accrued in whole or in part in Harris County, Texas.  Tex. Civ. Prac. & Rem. Code § 15.001 *et seq.*

## V.

## MISNOMER/MISIDENTIFICATION/ALTER EGO

22.     In the event any party is misnamed or not included herein, it is Plaintiff's contention that such was a "misidentification", "misnomer", and/or such parties are/were "alter ego" of parties named herein.  Alternatively, Plaintiff contends that such corporate veil should be pierced to hold such parties properly included in the interest of justice.

## VI.

## CONDITIONS PRECEDENT

23.     All conditions necessary to maintain this action have been performed or have occurred.

## VII.

## STATEMENT OF FACTS

24.     Shantalace Humble ("Ms. Humble" or "Lacey Humble" ) is  a black, thirty-nine (39) year old mother of two children, a son and a daughter.  Ms. Humble has never been convicted of a crime and has no history of violent behavior. Ms. Humble is a certified medical assistant and has worked for various healthcare providers, including, Texas Children's Hospital, Memorial Hermann Hospital, and M.D. Anderson Hospital.

25.     In October 2021, Ms. Humble gave birth to her daughter several months prematurely.  After birth, the baby was admitted to the neonatal intensive care unit where she received extensive medical care and treatment for several months.  Following discharge, Ms. Humble's daughter continued with medical care and treatment relating to complications of her premature birth. Ms. Humble was under extreme stress and anxiety worrying about her daughter's health, medical treatment, and prognosis.

26.     Ms. Humble suffers from anxiety disorder, panic attacks, post-partum depression, and post-traumatic stress disorder.  She is a survivor of domestic violence.  Ms. Humble takes medication for her anxiety and depression.

27.     In January 2023, Ms. Humble purchased a 2008 Lexus SUV from a local dealership/mechanic with whom Ms. Humble and her family had a long-standing relationship.  The seller placed paper plates on the vehicle and provided Ms. Humble with purchase and registration documentation.  Ms. Humble maintained this information and paperwork in the glove box of the vehicle.  The paper plates on Ms. Humble's vehicle were not expired.

28.     On February 4, 2023, Ms. Humble and her two children spent their regular family "movie night" at her mother Doris Humble and step-father Antione Carr's home.  At that time, Ms. Humble's daughter was fifteen months old, and her son was fourteen years old.  Ms. Humble's siblings, Tanuneka ("Tanny") Humble, Giselle ("Punky") Onyiah, and younger brother Matthew Humble were also present for "movie night."   Matthew is disabled. Ms. Humble did not consume any alcohol or drugs.

29.     Ms. Humble previously submitted a tenant application to a nearby apartment complex to move closer to her mother and step-father.   After the movie, Ms. Humble, her mother, and her sisters decided to drive by the apartment complex to observe the property at night.

30.     Ms. Humble secured her daughter in a car seat in the back seat of her vehicle and her son sat in the back seat with his baby sister.  Her sister Tanny followed Ms. Humble in her vehicle. Doris, Punky, and Matthew were passengers in Tanny's vehicle.  Tanny was operating her 2022 Mercedes-Benz.

31.     After Ms. Humble and her family drove by and looked at the property, they headed back to Doris Humble's home.  Again, Tanny Humble followed Ms. Humble.

32.     Ms. Humble was operating her vehicle on Greenhouse Road in Katy, Texas. She was driving in the middle lane. She was not speeding, not driving erratically, and was not using her cell phone or otherwise distracted.   Her children were properly belted in the back seat.

33.     At that time, Tanny Humble noticed a Harris County Sheriff Department patrol car pull behind her vehicle and appeared to be running her plates.   The patrol car then pulled around Tanny's vehicle and got behind Ms. Humble's vehicle.   Ms. Humble had no weapons or any contraband in her vehicle.

34.     The Harris County Deputy patrol car pulled behind Ms. Humble in the middle lane. Defendant Carpenter was between Ms. Humble's and her sister's vehicle.  Defendant Carpenter activated his lights and sirens.    Although Ms. Humble wondered why she was being stopped because he was not speeding and had not violated any traffic rules, she pulled to the left in the turning lane on Greenhouse Road and stopped.   She placed her vehicle in park, and made no attempt to flee the scene.

8

35.     Tanny Humble stopped her vehicle well behind the patrol vehicle. Defendant Carpenter approached Ms. Humble's vehicle, and she rolled down her window. Defendant Carpenter asked for her identification. Ms. Humble provided her name and date of birth. Ms. Humble asked why she was stopped. Defendant Carpenter did not respond.  She asked multiple times why she was stopped.  Deputy Carpenter did not respond.

36.     At no time did Ms. Humble make sudden movements, attempt to flee, or resist.  Ms. Humble did nothing that could be credibly construed as threatening. Ms. Humble gave no indication, verbal or nonverbal, that she intended to flee or resist.

37.     Defendant Carpenter ordered Ms. Humble to exit the vehicle.  Ms. Humble informed Defendant Carpenter that she felt uncomfortable about the stop, uncomfortable with Deputy Carpenter, and asked for a supervisor.   Defendant Carpenter became angry and annoyed.

38.     Ms. Humble informed Defendant Carpenter that she suffered anxiety disorder, depression, post-partum depression, and PTSD.  She informed Defendant Carpenter that she takes medication for the disorders and offered to show Defendant Carpenter the medication.  At no time did Ms. Humble make any sudden movements in the vehicle.  Instead of treating Ms. Humble calmly in consideration of her mental health conditions, he was angry and aggressive which only increased Ms. Humble's fear.

39.     Thereafter, Defendant Carpenter flashed his light in the back of Ms. Humble's vehicle and demanded to know who was in the back seat. Ms. Humble responded that her son and baby daughter were in the back seat.  Defendant Carpenter threateningly stated that her son looks "big" and demanded that he get out of the vehicle.   Ms. Humble's son made no aggressive movements

Certified Document Number: 118802254 - Page 9 of 25

or comments and was merely sitting in the vehicle. Defendant Carpenter appeared to focus on her son, not because of any conduct, verbal or nonverbal, but because of his size.

40.     In fear of her son's safety, she responded that her son is a minor and is not getting out of the vehicle. Ms. Humble again informed Defendant Carpenter that she did not feel comfortable with the Defendant's actions and asked to speak to a supervisor. Ms. Humble remained in her seat, made no sudden or threatening movements, and made no attempt to flee or resist.

41.     Throughout the exchange, Ms. Humble asked several times why she was stopped, stated she did not feel comfortable with Defendant Carpenter's stop, demeanor, and behavior, and asked for a supervisor. Defendant Carpenter did not ask about the paper plates or registration of the vehicle.

42.     At some time during the stop, Tanny Humble walked up the median along Greenhouse Road. She informed Defendant Carpenter she was Ms. Humble's sister. Tanny Humble overheard some of the exchange between Defendant Carpenter and Ms. Humble. Defendant Carpenter returned to his patrol car. Ms. Humble believed he was calling for a supervisor and rolled up her window.

43.     A short time later, Defendant Carpenter returned to Ms. Humble's vehicle and banged on the front driver's window with his fist and demanded she roll down her window. Defendant Carpenter was aggressive and angry. The vehicle was still in park, and Ms. Humble was seated in the driver's seat. She made no attempt to flee or place the vehicle in drive. She did not roll down the window, but again stated she did not feel comfortable with Defendant Carpenter and the stop and asked for a supervisor. Ms. Humble made no threatening movements or any verbal or nonverbal attempts to resist or flee.

Certified Document Number: 118802254 - Page 10 of 25

44.    Tanuneka Humble again informed Defendant Carpenter that Ms. Humble suffers from anxiety, depression, post-partum depression, was a victim of domestic violence, experiences panic attacks and may "freak out." Deputy Carpenter responded that he did not care about that, and he was conducting his investigation.  Tanuneka Humble asked Ms. Humble to roll down her window. She complied.

45.    At some point, Defendant Carpenter stated that the license tags were not coming back.  Ms. Humble responded that the tags were valid and offered to show him the documents.   Defendant Carpenter did not ask for the registration and again demanded Ms. Humble get out of the vehicle.

46.    Ms. Humble again told Defendant Carpenter that she did not feel comfortable with his behavior, the stop, and requested a supervisor. At this time, Defendant Carpenter was the only officer on the scene.

47.    Tanuneka Humble then asked Ms. Humble to get out of the car. At no time was Tanuneka Humble aggressive or attempted to interfere with Defendant Carpenter.  Her intention was to keep Ms. Humble calm to prevent a panic attack and prevent any violent action by Defendant Carpenter.

48.    At her sister's calming request, Ms. Humble got out of the vehicle peacefully. Ms. Humble did not attempt to flee, did not display any violence, or resistance.

49.    Defendant Carpenter immediately jerked Ms. Humble's arm behind her back and yelled she was under arrest.  Ms. Humble asked why.  Fearing for her sister's safety, Tanuneka Humble responded that her sister got out of the car as requested and pleaded with Deputy Carpenter to not hurt her sister.  Ms. Humble's son was terrified and pleading from the vehicle to not hurt his mother.

Certified Document Number: 118802254 - Page 11 of 25

50.     At that time, Defendant Carpenter slammed Ms. Humble to the ground with such force that she hit her head and lost consciousness. When she regained consciousness, she was face-down, hands behind her back, and fully handcuffed. Defendant Carpenter was kneeling on Ms. Humble's back and another officer was holding her down.

51.     When she was unconscious, Defendants Ramirez, Miller, and Crespin arrived at the scene. They did not move Defendant Carpenter off Ms. Humble or deescalate Defendant Carpenter or the situation.

52.      Defendants Ramirez, Miller, and Crespin knew that Defendant Carpenter's use of force was not justified, excessive, and unreasonable. Yet, neither Defendant Ramirez, Miller, nor Crespin made any verbal or physical attempt to restrain Defendant Carpenter.

53.     From the vehicle, Ms. Humble's son was crying to not hurt his mother. Doris Humble was crying and begging Defendants not to kill her daughter.  Ms. Humble was sobbing.

54.     When Defendant Carpenter threw Ms. Humble to the ground, her top came down and exposed her breasts. Defendant Carpenter demanded her to sit up, which she could not do handcuffed. Tanuneka Humble asked Defendant Carpenter if she could help her sister.  Defendant Carpenter agreed and Tanuneka Humble helped her sister sit up.  Tanuneka pulled Ms. Humble's top up and covered her exposed breasts. Ms. Humble remained handcuffed.

55.     Defendant Carpenter then put Ms. Humble in the back of the police vehicle.  In order to prevent a panic attack, Ms. Humble placed her head between her knees as she had been taught. Defendant Carpenter pushed her back up and commented that nothing was wrong with her. Defendant Carpenter got into the patrol and moved the patrol car off Greenhouse Road into a neighborhood.

Certified Document Number: 118802254 - Page 12 of 25

56.     Ms. Humble pleaded requesting the location and condition of her children and begged for her mother. Ms. Humble told Defendant Carpenter that her foot hurt and was swollen.  Ms. Humble's family followed the police car.

57.     Then at some point, paramedics arrived and examined her. Ms. Humble stated she did not want to be transported to the hospital.  She asked Defendant Carpenter if he was taking her downtown.  Defendant Carpenter told her that he was not taking her downtown.  He did not give her any ticket. He provided an incident information card.  Deputy Carpenter said she was free to go.

58.     Unbeknownst to Ms. Humble, Defendant Carpenter filed an Affidavit with the Harris County District Attorney's Office in support of a charge of "interference with public duties."  The basis of this charge included Ms. Humble rolling up her window.  Interesting, there is no mention in the affidavit that the tags or vehicle were stolen.  The charges were dismissed due to no probable cause.

**VIII.**

**<u>CAUSES OF ACTION</u>**

**<u>PLAINTIFF'S CIVIL RIGHTS CLAIMS</u>**

59.     Plaintiff incorporates all preceding paragraphs by reference herein.

60      Shantalace Humble had the right under the Fourth Amendment to the Constitution to be secure in her person, home, and property against unreasonable search and seizure and to not be subjected to excessive force by Defendants. These rights are protected against deprivation by state actors by the Fourteenth Amendment.

Certified Document Number: 118802254 - Page 13 of 25

61.     Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights secured by the Constitution and laws, shall be liable to the injured party in action for redress.

62.     Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

63.     Each Defendant, jointly, severally, or both, deprived Ms. Humble of her rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment.

64.     The acts and omissions of each Defendant were a proximate cause and cause in fact of Ms. Humble's injuries and damages.

## <u>COUNT ONE</u>

**Violations of Shantalace's Constitutional Rights by Defendants Harris County
a/k/a Harris County Sheriff's Department, Steven Carpenter,
Omar Ramirez, Adrian Miller, and Bryant Crespin**

65.     Plaintiff realleges and incorporates all preceding paragraphs by reference herein.

66.     The actions of Defendants, Harris County a/k/a Harris County Sheriff's Department, Steven Carpenter, Omar Ramirez, Adrian Miller, and Bryant Crespin, and their creation and establishment of the policies, customs, or procedures of the Harris County Sheriff's Department violated Ms. Humble's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, this conduct violated his rights: (1) to be free from unreasonable search and seizure of her person under the Fourth Amendment to the Constitution of the United States; and (2) to be free from the use of unreasonable, unnecessary, and excessive force under the Fourth and Fourteenth Amendments to the Constitution of the United States.

67.     The policy makers for Harris County a/k/a Harris County Sheriff's Department, Steven

Certified Document Number: 118802254 - Page 14 of 25

Carpenter, Omar Ramirez, Adrian Miller, and Bryant Crespin, under color of law, intentionally, negligently, and with complete and deliberate indifference, cause Ms. Humble to be deprived of her constitutional, statutory, and common law rights under Texas law and the Federal Constitution. Ms. Humble has a constitutionally recognized liberty interest to be free from excessive force and violence by anyone with state authority.

68.    Harris County a/k/a Harris County Sheriff's Department, authorized, approved, permitted, ratified, and tolerated the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Carpenter, Ramirez, Miller, and Crespin thus depriving Ms. Humble of her constitutional rights. Harris County Sheriff's Department, Harris County and/or its final policy maker (or person who was delegated final policy making authority and/or final decision making authority) authorized, approved, permitted, ratified, and tolerated the custom and practice of the unconstitutional acts committed by Defendants Carpenter, Ramirez, Miller, and Crespin. With full knowledge of the deception, and wrongful, and unconstitutional acts of Defendants Carpenter, Ramirez, Miller, and Crespin, Harris County a/k/a Harris County Sheriff's Department ratified their conduct or, in the alternative, failed to take appropriate corrective action because of its conscious indifference to their actions.

69.    Defendants Carpenter, Ramirez, Miller, and Crespin used authority conferred on them by the Harris County Sheriff's Department and Harris County to commit the offenses enumerated above.  Defendants Carpenter, Ramirez, Miller, and Crespin and the Harris County Sheriff's Department and Harris County deliberate indifference violated Ms. Humble's constitutional rights to bodily integrity. The Harris County Sheriff's Department and Harris County were aware of misconduct of Defendants Carpenter, Ramirez, Miller, and Crespin in the past, and acted with deliberate indifference toward Ms. Humble's constitutional rights.  Thus, the Harris County

Certified Document Number: 118802254 - Page 15 of 25

Sheriff's Department and Harris County are liable under 42 U.S.C. § 1983. The Harris County Sheriff's Department and Harris County's failure to take action that was obviously necessary to prevent or stop the unlawful, excessive, and unconstitutional conduct of Harris County's Sheriff's Department and Harris County caused unconstitutional injuries to Ms. Humble, and constitute official policy decisions for which Harris County Sheriff's Department and Harris County are liable.

70.    Without waiving the foregoing, Ms. Humble claims Defendant Harris County violated Plaintiff's Constitutional rights by the following specific conduct; acts or omissions; and/or policies, customs, and practices:

> (1)  Defendants authorized, approved permitted, ratified, tolerated the official policy, or unofficial custom, of using investigations as a rubber stamp to justify, authorize or approve excessive force by its deputies. Plaintiff claims that Defendants were the final policy making officials and were aware of Defendants Carpenter, Ramirez, Miller, and Crespin, and other officers' deceptions and the obviously defective investigations and either approved such conduct or failed to take corrective action. Because of such failure or lack of corrective action, Ms. Humble was a victim of excessive force.

> (2)  Defendants authorized, approved, permitted, ratified, and tolerated the office policy, or unofficial custom, of using investigations of Defendants as a rubber stamp to justify, authorize or approve of excessive force by Carpenter. Plaintiff claims Defendants were the final policy making officials and were aware of Defendant Carpenter's deceptions, and other officers' obviously defective investigations and either approved such conduct or failed to take corrective action. Because such failure or lack of corrective action, Ms. Humble was a victim of excessive force.

> (3)  Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of using TCOLE minimum standards for hiring, supervision, disciplinary and/or retention decisions regarding patrol deputies like Carpenter, Ramirez, Miller, and Crespin. Plaintiff claims that Defendants were the final policy making officials and were aware of the use of TCOLE minimum standards, and either approved such conduct or failed to take corrective action. Because of such failure or lack of corrective action Ms. Humble was a victim of excessive force.

Certified Document Number: 118802254 - Page 16 of 25

(4) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom, of widespread lack of standards, inadequate training, and poor accountability regarding patrol deputies like Carpenter, Ramirez, Miller, and Crespin. Plaintiff claims that Defendants were the final policy making officials and were aware of widespread lack of standards, inadequate training, and poor accountability regarding patrol deputies like Carpenter, Ramirez, Miller, and Crespin, and either approved such conduct or failed to take corrective action. Because of such failure or lack of corrective action Ms. Humble was a victim of excessive force.

(5)  Defendant Carpenter's history and use of force history, prior investigations, prior deceptions, was known to Harris County. That, combined with the extreme facts of this case, and the use of a rubber stamp investigation to cover up Carpenter and Harris County's liability, fall under the "single incident exception" to *Monell* policy or custom liability.

(6) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom or practice of hiring deputies such as Lerma while only requiring a high school degree. Plaintiff says that Defendants were the final policy making officials and were aware of the fact that Defendants, and other officers' may have had only high school degrees, and there was a propensity for such officers to use excessive force. Because of such failure or lack of corrective action, Plaintiff was a victim of excessive force.

(7) Defendants authorized, approved, permitted, ratified, and tolerated the official policy, or unofficial custom or practice of not requiring deputies to get insurance to cover excessive force claims and/or actively discouraging deputies from getting such insurance.  Plaintiff says that Defendants were the final policy making officials and were aware of the fact that Defendants Carpenter, Ramirez, Miller and Crespin, and  other officers'  did not have such insurance, and there was a propensity for such officers to use excessive force. Because of such failure or lack of corrective action, Ms. Humble as a victim of excessive force.

(8)  Defendants failed to adequately supervise Defendants Carpenter, Ramirez, Miller, and Crespin, Plaintiff claims Defendants were aware of Defendant Carpenter, Ramirez, Miller, and Crespin's propensities for  Constitutional violations and failed to ensure that they had supervision sufficient to prevent the unlawful conduct. Because Defendants Carpenter, Ramirez, Miller, and Crespin did not have adequate supervision, they were able to make an unwarranted attack on Plaintiff. Defendants acted or failed to act with malice and/or deliberate indifference and with awareness of the substantial risk of harm their conduct posed. This conduct caused Ms. Humble to suffer Constitutional deprivations and injuries.

(9)  Defendants failed to perform an adequate training, or with deliberate indifference  ignored the training results, of Defendants Carpenter, Ramirez, Miller and Crespin to determine their propensity for violating civil rights prior

17

to employing them as Peace Officers; and, or alternatively, failed to terminate their employment as Peace Officers after learning of his propensity for violating civil rights. Plaintiff claims Defendants Carpenter, Ramirez, Miller, and Crespin demonstrated characteristics from which Defendants should have known of their propensity for violating civil rights prior to their employment as a Peace Officer by Defendants. Alternatively, Plaintiff claims that Defendants Carpenter, Ramirez, Miller and Crespin demonstrated their propensity for violating civil rights during their tenure at the Harris County Sheriff's Department, for which their employment should have been terminated. Defendants are the final decision makers for Harris County Sheriff's Department and are vested with the authority to hire and terminate employees. Because Defendants employed or retained Defendants Carpenter, Ramirez, Miller and Crespin they knew or should have know of their propensity to violate civil rights, Defendants placed Carpenter, Miller, and Crespin in a position where they could violate Ms. Humble's rights.

(10)  Defendants failed to perform an adequate screening, or with deliberate indifference ignored the screening results, of Defendants Carpenter, Ramirez, Miller, and Crespin to determine their propensity for violating civil rights prior to employing them as a Peace Officer; and, or alternatively, failed to terminate their employment as a Peace Officer after learning of his propensity for violating civil rights. Plaintiff claims that Defendants Carpenter, Ramirez, Miller, and Crespin demonstrated characteristics from which Defendants should have known of their propensity for violating civil rights prior to their employment as a Peace Officer by Defendants. Alternatively, Plaintiff claims that Defendants demonstrated their propensity for violating civil rights during their tenure at the Harris County Sheriff's Department, for which their employment should have been terminated Defendants are the final decision makers for Harris County Sheriff's Department and Harris County and are vested with the authority to hire and terminate employees. Because Defendants employed or retained Defendants Carpenter, Ramirez, Miller and Crespin when they knew or should have known of their propensity to violate civil rights, Defendants placed the Deputy Defendants in a position where they could violate Ms. Humble's rights

(11)  A law enforcement officer, Defendants Ramirez, Miller, and Crespin "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). See also, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.").

Certified Document Number: 118802254 - Page 18 of 25

71.    These acts or omissions, taken individually or collectively, violated Plaintiff's rights guaranteed by the United States Constitution. These rights are clearly established by the United States Constitution, The Texas State Constitution, law enforcement training, the policies and procedures of the Harris County Sheriff's Department, and Harris County, and by the Texas Code of Criminal Procedure; therefore, Defendants Harris County Sheriff's Department and Harris County are not entitled to official immunity. Each of these official policies, or unofficial customs, were singularly the moving force of the violations of Plaintiff's constitutional rights. Alternatively, all or part of these official policies, or unofficial customs, combined to become the moving force of the violations of Plaintiff's constitutional rights. These specific acts violating Plaintiff's constitutional rights were the cause or proximate cause of Plaintiff's injuries.

## COUNT TWO

**Defendants Carpenter, Ramirez, Miller and Crespin, in their Personal Capacity**

**A.    Violations of 42 U.S.C. § 1983 – Excessive Force**

72    Defendants Carpenter, Ramirez, Miller and Crespin, in their personal capacity, while acting under the color of state law as uniformed police officers for Harris County Sheriff's Department, deprived Plaintiff of rights secured to her by the Constitution of the United States. Defendants Carpenter, Ramirez, Miller, and Crespin inflicted severe personal injuries upon Plaintiff while Plaintiff was in custody and otherwise safely secured. Defendant' actions showed conscious indifference to a right to be free of unreasonable seizure, as guaranteed ay the Fourth Amendment, which was well-known to them at the time.

73.    No reasonable officer or person in Defendant Carpenter's position would have thought such type of force was necessary to prevent imminent death or great bodily harm. Moreover, no

19

Certified Document Number: 118802254 - Page 19 of 25

reasonable officer would have thought the amount of such type of force would be necessary to prevent imminent death or great bodily harm, as Ms. Humble was not resisting when she received her severe personal injuries and at that time had no weapon capable of, and expressed no desire to, incapacitate or seriously injure Defendant Carpenter or others.

74.    Defendants' actions constitute conscious indifference to Plaintiff's rights under the Fourth Amendment to the United Stated Constitution and their conscious indifference to those rights was the producing and proximate cause of Plaintiff's injuries. The force Defendants used was greatly in excess of what the situation required and their actions are shocking to the collective conscience of the community.

**B.    Violations of 42 U.S.C. § 1983 – Summary Punishment**

75.    Every citizen of the United States is guaranteed due process of law prior to loss of life, liberty or property by the Fourteenth Amendment to the U.S. Constitution. Defendant Carpenter, angry with Plaintiff for what Defendant Carpenter perceived to be interfering with his duties, inflicted personal injury upon Plaintiff after Plaintiff was subdued and otherwise safely under control.  Defendant Carpenter took it upon himself to punish Plaintiff by inflicting severe personal injuries.

76.    Defendant Carpenter acted under color of state law when he injured Plaintiff. Defendant Carpenter's actions demonstrated his conscious indifference to Plaintiff's right to due process. Defendant Carpenter's conscious indifference to Plaintiff's rights under the Fourteenth Amendment was the proximate and producing cause of Plaintiff's injuries.

77.    No reasonable officer could have believed it was reasonable to slam down an unarmed, subdued and otherwise safely under control woman. At the time she was slammed to the ground, Plaintiff posed no threat to the officer or others.

Certified Document Number: 118802254 - Page 20 of 25

## IX

## DAMAGES

78.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered excruciating, personal injuries for which she brings suit.  As a result of the nature and severity of the injuries, Plaintiff required medical treatment in the past and will, in reasonable probability, require other and additional medical treatment in the future.  Charges for such medical care and treatment that have been made in the past and those which will be made in the future have been and will be reasonable charges necessitated by Defendants' conduct.  Furthermore, because of the nature and severity of the injuries sustained and/or exacerbated and aggravated of a prior condition, Plaintiff suffered physical pain and suffering and mental anguish, and in reasonable probability, she will continue to suffer same into the future.  Additionally, Plaintiff has and will continue to suffer physical impairment for which she seeks additional damages.

## PUNITVE DAMAGES

79.    Plaintiff incorporates all preceding paragraphs as if set fully herein. The individually named defendants actions and inactions cause them to be liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## ATTORNEY'S FEES

80.    Plaintiff is entitled to recover attorneys' fees and costs to enforce her Constitutional rights and under 42 U.S.C. Sections 1983 and 1988.

81.    As discussed in this Petition, Plaintiff suffered not only easily quantifiable economic damages, but also other forms of damages such as mental anguish damages, pain and suffering,

and impairment and will likely continue to suffer these damages in the future. Both the Constitution of the United States and the Constitution of the State of Texas provide Plaintiff with the inalienable fundament right to have her case heard and decided by a jury of her peers at trial. In accordance with these fundamental rights, it will ultimately be the responsibility and province of a jury of Plaintiff's peers to decide the economic value of damages Plaintiff suffered as a result of Defendants' wrongful actions and omissions which form the basis of this lawsuit.

82.     However, as Plaintiff is required by law to state the maximum amount of damages she is seeking, Plaintiff believes that when the totality of her damages is considered, along with the wrongful nature of Defendants' conduct, it is possible that a jury may ultimately decide that Plaintiff's individual damages exceed $1,000,000.00. Plaintiff reserves the right to amend this Petition.

## REQUEST FOR JURY TRIAL

83.     Plaintiff hereby requests a jury trial. A jury fee has been and/or will be paid in this matter.

## XI.

## AUTHENTICATION AND PRESERVATION

84.     In accordance with Texas Rule of Civil Procedure 193.7, notice is hereby given that the Plaintiff intends to use at trial and/or in pre-trial proceedings, all documents produced in discovery. Defendants are hereby given notice that any document or other material, including electronically stored information, that may be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

Certified Document Number: 118802254 - Page 22 of 25

85.    Pursuant to the doctrine of spoliation, as that term is understood in Texas law, Defendants are further placed on notice of their obligation to safeguard and preserve all documents or other physical evidence now in their possession which might bear in any way upon either discovery or the discovery of admissible evidence in this case and of Plaintiff's intention to seek sanctions of the Court should they fail, either intentionally or by neglect, to do so.

## **PRAYER**

For the reasons stated above, Plaintiff requests that Defendants be cited and required to appear and that upon final jury trial and hearing, Plaintiff receive judgment against Defendants, jointly and severally, as follows:

1.    Actual damages against Defendants, jointly and severally, within the jurisdictional limits of this Court;

2.    Pre- and post-judgment interest as allowed by law;

3.    Costs of court;

4.    Punitive damages determined by the jury;

5.    Attorney's fees and expenses; and

6.    Such other and further relief, both general and special, legal and equitable, to which Plaintiff is justly entitled.

Respectfully submitted,

**THE CHANDLER LAW FIRM, L.L.P.**


*/s/ Sherry Scott Chandler*

_____

Sherry Scott Chandler
State Bar No. 17915750
Lewis M. Chandler
State Bar No. 24036350
4141 Southwest Freeway, Suite 300
Houston, Texas 77027
(713) 228-8508 (Telephone)
(713) 228-8507 (Facsimile)
sherry@chandlerlawllp.com
lewis@chandlerlawllp.com
**COUNSEL FOR PLAINTIFF**

Certified Document Number: 118802254 - Page 24 of 25

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Belinda Espinosa on behalf of Sherry Chandler
Bar No. 17915750
belinda@chandlerlawllp.com
Envelope ID: 96988574
Filing Code Description: Petition
Filing Description: Original Petition, Notice of Rule 194 Required Disclosures, and Request for Jury Trial
Status as of 2/5/2025 3:25 PM CST

Associated Case Party: Shantalace Humble

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sherry ScottChandler | | sherry@chandlerlawllp.com | 2/4/2025 6:59:17 PM | SENT |
| Lewis M.Chandler | | lewis@chandlerlawllp.com | 2/4/2025 6:59:17 PM | SENT |
| Belinda L.Espinosa | | Belinda@chandlerlawllp.com | 2/4/2025 6:59:17 PM | SENT |

Certified Document Number: 118802254 - Page 25 of 25



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 3, 2025

Certified Document Number:        118802254 Total Pages:  25

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**