United States District Court
Southern District of Texas
**ENTERED**
January 14, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Shantalace Humble, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 4:25-cv-01081 |
| v. | § | |
| | § | |
| Harris County Texas, et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

This is a civil rights case.[1]  Defendant Harris County, Texas ("Harris County"), and Defendants Steven Lamar Carpenter, Jr., Omar Ramirez, Bryant Crespin, and Adrian Miller, all of whom are Deputies of the Harris County Sheriff's Office (collectively, "the Deputies"), have moved to dismiss Plaintiff Shantalace Humble's amended complaint (Dkt. 14) under Fed. R. Civ. P. 12(b)(6).  Dkts. 15, 24, 30, 33, 41.

After carefully reviewing the motions, responses, Dkts. 27, 46, replies, Dkts. 39, 47, the record, and the applicable law, the Court (a) grants in part and denies in part Deputy Carpenter's motion to dismiss (Dkt. 24); (b) grants in full Deputies Ramirez's, Miller's, and Crespin's motions to dismiss (Dkt. 30, Dkt. 33; Dkt. 41); and (c) grants Harris County's motion to dismiss (Dkt. 15).

---

[1] All parties consented to the undersigned judge.  *See* Dkt. 6, 25, 31, 43, 34.

## Background

### I. Factual background

The following facts are taken as true at this stage. They concern a traffic stop on February 4, 2023.

Humble is a Black woman and the mother of two children, a 15-month-old daughter and 14-year-old son. Dkt. 14 at 8-9. In January 2023, she bought a car from "a local dealership/mechanic" known to her and her family. *Id.* at 9. The seller provided Humble with purchase and registration documentation. *Id.* The car had paper plates that had not expired as of February 2023. *Id.*

On the evening of the incident, Humble was driving her children in the new car. *Id.* at 9-10. A Harris County Sheriff's Office cruiser pulled up behind Humble's vehicle, and the deputy inside it "appeared to be running her plates." *Id.* at 10. The cruiser activated its lights and sirens. *Id.* at 11. Humble pulled over and placed her vehicle in park. *Id.* Humble's sister Tanny, who had been driving behind them in another car with Humble's mother and siblings, stopped behind the cruiser. *Id.* at 10-11.

Carpenter was the Deputy who had stopped Humble's car. *Id.* at 11. He approached Humble's vehicle and asked for her identification. *Id.* at 5, 11. She rolled down her window and provided her name and date of birth. *Id.* at 11. Humble asked Carpenter multiple times why she had been stopped and informed him that she suffers from anxiety, depression, and post-traumatic

stress disorder. *Id.* at 2, 12.  She did not attempt to flee.  *Id.* at 11.  Carpenter then ordered Humble to exit her vehicle.  *Id.*  Humble expressed that she was "uncomfortable," requested a supervisor, and disclosed her mental health issues.  *Id.* at 11-12.  But Carpenter became "angry," "annoyed," and "aggressive."  *Id.*

Carpenter then aimed his light toward the back seat, commented that Humble's son "looks 'big,'" and demanded that he exit the vehicle.  *Id.* at 12. Humble responded that her son was a minor and would not be getting out of the car.  *Id.*  She continued to ask why she had been stopped, to express her discomfort, and to request a supervisor.  *Id.* at 13.  At some point, Humble's sister stepped out of her vehicle and identified herself to Carpenter.  *Id.*

Carpenter returned to his patrol car.  Believing that he was calling his supervisor, Humble rolled up her window.  *Id.*  When he returned, Carpenter "was aggressive and angry," banged his fist on Humble's window, and demanded her to roll it down.  *Id.*  Instead of doing so, Humble again told Carpenter that she did not feel comfortable and asked for a supervisor.  *Id.* Humble's sister informed Carpenter that Humble suffered from mental health issues, was a victim of domestic violence prone to panic attacks, and expressed concern that Humble could "freak out."  *Id.*  But Humble did not make any threatening movements or attempt to flee.  *Id.*  Humble eventually rolled down her window at her sister's request.  *Id.* at 14.

During the traffic stop, Carpenter told Humble that her "license tags were not coming back." *Id.* at 14. She responded that the tags were valid and offered to show him the documents. *Id.*

Carpenter ordered Humble to get out of her car, but she did not initially comply. *Id.* Instead, Humble repeated that she did not feel comfortable and asked for a supervisor. *Id.* After her sister persuaded her to exit the vehicle, Humble did so "peacefully," making no attempt to flee or resist. *Id.*

When Humble stepped out, Carpenter "grabbed her arms behind her back" and screamed that she was under arrest. *Id.* at 2, 14. Humble asked why she was being arrested. *Id.* at 14. Carpenter then "violently slammed" Humble to the ground. *Id.* at 2, 15. The impact of her face and head hitting the ground rendered her unconscious. *Id.* at 3, 15. When she woke up, Humble was lying face-down, hands cuffed behind her back, with her breasts exposed. *Id.* Although Humble was not resisting, Carpenter kneeled on her back while an unidentified officer held her down. *Id.* at 15.

Deputies Ramirez, Miller, and Crespin arrived on scene, although the complaint does not explain when this occurred. *Id.* Yet the complaint asserts that one or more of them "assisted" in restraining Humble. *Id.* It also accuses those other deputies of failing to move, restrain, or otherwise de-escalate Deputy Carpenter's actions. *Id.*

4

Carpenter put Humble in the back of a police vehicle. *Id.* at 16. She remained handcuffed. *Id.* At some point, paramedics arrived and examined her. *Id.* Carpenter eventually told Humble that she was free to go. *Id.* at 16. No citation was issued. *Id.* at 3.

Sometime later, Carpenter filed an affidavit with the Harris County District Attorney's Office, alleging that Humble's rolling up her window supported a charge for interference with public duties. *Id.* at 16. The charges were dismissed for lack of probable cause. *Id.* at 16.

The incident left Humble with a concussion, a foot injury, and "serious and long-term mental and emotional consequences." *Id.* at 3. She filed an Internal Affairs complaint but received no response. *Id.* at 17.

## II.  **Procedural history**

On February 4, 2025, Humble sued Harris County and the Deputies in state court. Dkt. 1-1 (original petition). Harris County timely removed the case. Dkt. 1 (notice of removal).

Post-removal, Humble filed a motion requesting that Harris County be ordered to provide the Deputies' addresses for service of process. Dkt. 11. The Court granted the motion, Dkt. 13, and Harris County provided the information as directed on April 21, 2025, *see* Dkt. 46 at 5. Carpenter was served on May 29, 2025. Dkt. 18. Ramirez and Crespin were served on June

9 and June 11, 2025, respectively.  Dkts. 19, 20.  Miller was served on June 26, 2025.  Dkt. 37.

Humble filed an amended complaint asserting claims under 42 U.S.C. § 1983 premised on violations of the Fourth, Fourteenth, and First Amendments.  *See* Dkt. 14 at 20, 32.  And she also asserted a Section 1983 municipal liability claim against Harris County.  *See id.* at 27.

Defendants moved to dismiss all claims.  Dkt. 15 (Harris County); Dkt. 24 (Carpenter); Dkt. 30 (Ramirez); Dkt. 33 (Crespin); Dkt. 41 (Miller). Humble responded to Harris County's motion, *see* Dkt. 27; *see also* Dkt. 28 (amended certificate of service to Dkt. 27), prompting Harris County to file a reply, Dkt. 39.  Humble also filed a consolidated response to the Deputies' motions to dismiss, Dkt. 46, to which the Deputies replied, Dkt. 47.  The motions are ripe for resolution.

## Legal Standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

## Analysis

Defendants' motions to dismiss raise one overlapping contention. They all maintain that Humble's claims are barred by the statute of limitations. But as explained below, Humble filed suit within the limitations period. And because her diligence in effectuating service cannot be ascertained from the pleadings alone, the timeliness of her claims—which is an affirmative defense—is not appropriately resolved at this motion-to-dismiss stage.

Apart from limitations, the Deputies assert that qualified immunity bars Humble's Section 1983 claims that challenge the constitutionality of her initial

traffic stop; allege that the arresting deputy, Deputy Carpenter, used excessive force; accuse other deputies of wrongfully failing to intervene; and assert that Carpenter retaliated against her for exercising protected speech.  The Court agrees that Humble has not adequately alleged that Deputy Carpenter lacked reasonable suspicion to stop her.  But she has alleged enough facts to suggest that Carpenter violated clearly-established Fourth Amendment rights by slamming Humble to the ground after she had already complied with his directives and continued to apply force even when she was unconscious.

On the other hand, Humble's allegations are insufficient to show that Deputy Carpenter violated any clearly-established First Amendment right.  Likewise, Humble has not plausibly alleged that Deputies Ramirez, Miller, and Crespin can be liable as bystanders with respect to Carpenter's use of force.  And the lack of a viable First Amendment retaliation claim against Carpenter forecloses any related bystander theory against those other deputies, too.

Humble's remaining claims against Harris County are barred.  Her allegations fail to show that County officers had a pattern of using excessive force under similar circumstances.  And her assertions about the County's customs or policies are conclusory and lack any articulated connection to the incident in this case.  There is no basis for municipal liability.

I.    **Defendants are not entitled to dismissal of the Section 1983 claims based on their limitations defense.**

Defendants first contend that Humble's claims are barred by the statute of limitations. *See* Dkt. 15 at 5; Dkt. 24 at 10; Dkt. 30 at 8; Dkt. 33 at 8; Dkt. 41 at 8. Humble pleaded that she timely filed her petition and served Harris County soon thereafter. *See* Dkt. 14 at 4-5. In her response brief, Humble also asserts that she diligently sought to serve the Deputies. Dkt. 46 at 1-2.

A.    **Texas law, which supplies the limitations period, looks at when suit was filed and when the defendants were served.**

"Because no specified federal statute of limitations exists for § 1983 suits, federal courts borrow the forum state's … personal-injury limitations period …." *Edmonds v. Oktibbeha Cnty., Miss.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Texas, the statute of limitations for personal-injury claims is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003. For § 1983 claims, accrual "occurs when the plaintiff knows, or should have known, of the facts that form the basis of the claim." *Griffin v. New Orleans City*, 628 F. App'x 300, 301 (5th Cir. 2016).

Humble's claims accrued on February 4, 2023, the date of the traffic stop. Dkt. 14 at 2. She filed suit on February 4, 2025, which is within the limitations period. *See* Dkt. 1 at 2; Dkt. 1-1.

"To comply with a statute of limitations," however, Texas law also requires that defendants be served "within the limitations period." *Ortega v.*

*Young Again Prods., Inc.*, 548 F. App'x 108, 113 (5th Cir. 2013) (citing *Slagle v. Prickett*, 345 S.W.3d 693, 697 (Tex. App.—El Paso 2011, no pet.)).  "[T]he date of service will relate back to the date suit was filed" if the plaintiff exercised due diligence in obtaining service of process.  *See Henderson v. Repub. of Tex.*, 672 F. App'x 383, 385 (5th Cir. 2016); *see also, e.g.*, *Lopez v. Unknown Galveston Police Officer*, 2006 WL 3702895, at *9-10 (S.D. Tex. Dec. 13, 2006) (applying this principle to a § 1983 claim).  To meet that test, a plaintiff must "present evidence regarding the efforts that were made to serve the defendant" and "explain every lapse in effort or period of delay."  *Proux v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007).

Moreover, the statute of limitations is an affirmative defense.  That defense supports dismissal under Rule 12(b)(6) only if "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

### B. Humble diligently served Harris County, making her claims against it timely.

Harris County was served on February 17, 2025, thirteen days after the limitations period expired.  *See* Dkt. 1-2 at 2-4.  It argues that Humble failed to exercise due diligence by waiting until the final day of the limitations period

to file this suit and not serving Harris County until afterwards.  *See* Dkt. 15 at

5 n.3 (citing and incorporating Dkt. 4 at 13).

Humble responds that she undertook diligent efforts to serve Harris

County.  Dkt. 27 at 3.  This is evident on the face of her pleadings.  She

requested issuance of the citation immediately upon filing suit.  *See* Dkt. 14 at

4 (first amended complaint).  Eight days passed before the district clerk issued

the citation.  *See id.* at 5 (February 12, 2025 citation); *see also* Dkt. 1-3 (copy of

citation).  That brief delay was not within Humble's control.  Once the citation

was issued, Humble ensured that Harris County was served with process

quickly, within five days.  *See* Dkt. 14 at 5 (February 17, 2025 date of service).

That is sufficiently diligent for the date of service to relate back to the filing of

suit, making her claims against the County timely.

### C.    Whether Humble diligently served the Deputies cannot be resolved at this stage.

The Deputies similarly invoke the limitations period.  But their

contentions implicate matters outside the pleadings and thus are insufficient

to merit dismissal under Rule 12(b)(6).

According to the Deputies, Plaintiff's waiting until the end of the

limitations period to sue in state court, especially when removal was "likely,"

showed a lack of diligence.  *See* Dkt. 47 at 2.  But there is nothing wrong with

filing suit on the last day of the limitations period—just like Humble did in

this case. *See, e.g., Larkins v. S.D.P. Mfg. Inc.*, 2024 WL 3744396, at *3 (S.D. Tex. Aug. 8, 2024) (state court suit was timely filed on the next business day after the limitations period ended); *McPhaul v. Kimbrough*, 2020 WL 5735173, at *4 (E.D. Tex. Sept. 4, 2020) (Section 1983 claim was timely filed on the last day of the two-year limitations period), *adopted by* 2020 WL 5709270 (E.D. Tex. Sept. 24, 2020).

The only remaining question is whether Humble diligently served the Deputies.  "[O]nce the defendant demonstrates that service occurred after the limitations deadline, the burden shifts to the plaintiff to explain the delay." *Sutton Place 1 Townhouse v. AmGuard Ins. Co.*, 668 F. Supp. 3d 684, 690 (W.D. Tex. 2023) (quoting *Proulx*, 235 S.W.3d at 215).  Because determining if service was diligent can be a fact-intensive inquiry, it is often resolved on summary judgment or at trial.  *See id.* (collecting cases).

There are some instances where failure to diligently serve has led to dismissal at the Rule 12(b)(6) stage.  That has occurred when (1) in response to the motion to dismiss, "the plaintiff offered no excuse—or excuses that were invalid as a matter of law—for" the delay, (2) "documents subject to judicial notice (such as court dockets) evinced" a lack of due diligence, and (3) neither party attached relevant evidence to the motion or response.  *Id.* at 691 (collecting cases).  None of those categories applies.

Far from failing to explain the delayed service, Humble provided a detailed account of her service efforts when responding to the motions to dismiss. *See* Dkt. 46 at 4-5. She also attached an affidavit corroborating her allegations, *see* Dkt. 46-1, which is not a proper subject for judicial notice. And in other filings, Humble maintained that she tried to serve the Deputies sooner but only learned their correct addresses after Harris County finally agreed to and then was ordered to divulge them. *See* Dkt. 11 at 2; Dkt. 13 (April 17, 2025 order compelling Harris County to supply those addresses).

Based on the pleading alone, this Court cannot determine whether Humble's service efforts were adequately diligent. No judicially noticeable records conclusively negate the possibility that she exercised the requisite diligence. And this Court declines to consider materials outside the pleadings, which would require converting the motions to dismiss into motions for summary judgment. *See Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008) (when matters outside the pleadings are submitted to support or oppose a motion to dismiss, courts may, but are not required to, convert the motion to one of summary judgment and consider those materials). The statute of limitations cannot justify dismissal at this stage.

II.    **Humble has adequately pleaded one Section 1983 theory against Deputy Carpenter but none against the other deputies.**

As their alternative basis for dismissal, the Deputies invoke qualified immunity.  Dkt. 24 at 14; Dkt. 30 at 13; Dkt. 33 at 13; Dkt. 41 at 13.  Humble responds that she has alleged enough facts to overcome qualified immunity by detailing how each of the Deputies violated her clearly established constitutional rights.  *See* Dkt. 46 at 7, 9-10.  The Court agrees with the Deputies, as concluded below, that most of the Section 1983 theories are barred.  Nevertheless, the Court also concludes that Humble has adequately stated an excessive force theory against Deputy Carpenter.

A.    **Qualified immunity**

Qualified immunity is an affirmative defense that shields government officials from civil liability.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).  At the motion to dismiss stage, a plaintiff must "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015) (internal quotation marks and citation omitted).

Overcoming qualified immunity requires sufficient allegations both that (1) the defendant's conduct, as alleged, violated the plaintiff's constitutional rights; and (2) the defendant's conduct was objectively unreasonable in light of

clearly established law. *See Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004). For the second requirement, the Court determines "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) ("*Hare III*"). A right was "clearly established" if "a legislative directive or case precedent" made it "sufficiently clear such that every reasonable officer would have understood that what he is doing violates the law." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020).

### B. One theory against Deputy Carpenter survives dismissal.

According to the complaint, Deputy Carpenter violated Humble's constitutional rights under the Fourth, Fourteenth, and First Amendments. Dkt. 14 at 20, 32. Specifically, Humble alleges that Carpenter unlawfully stopped her car, used excessive force against her during the stop, and did so to retaliate against her protected speech. *Id.* at 20, 23, 32.

Humble has adequately alleged that Carpenter violated her clearly established rights by using excessive force. But her initial stop was lawful. And her failure to address the First Amendment theory warrants its dismissal.

#### 1. Carpenter had reasonable suspicion to stop Humble's car.

According to the complaint, Deputy Carpenter stopped Humble's vehicle without reasonable suspicion and profiled her because of her race and

15

temporary dealer plates. Dkt. 14 at 23-24. Carpenter counters that the stop was justified because the temporary plate was not showing as valid. *See* Dkt. 24 at 14 (citing Dkt. 14 ¶ 45).

"The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). This is a two-part inquiry, asking "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry*, 392 U.S. at 19-20).

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur ...." *Id.*; *see also United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007) (lawful stop of vehicle that failed to display a front license plate); *United States v. Fontenot*, 284 F. App'x 193, 194 (5th Cir. 2008) (stop was proper when officer did not see a rear license plate on the car). For this inquiry, the Court looks to the facts known to the officer at the time of the stop, not his motivations, even if they are pretextual. *See United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

Humble's own allegations confirm that there was an objectively reasonable basis for Deputy Carpenter to believe that she had violated traffic laws. The complaint concedes that Carpenter "appeared to be running her

plates" before pulling her over. Dkt. 14 at 10. It also admits that Carpenter told Humble, during the traffic stop, that her paper tags were not returning as valid. *See id.* at 14. As Defendants note, Dkt. 47 at 4-5, driving with an unauthorized temporary tag would violate Texas law. *See* Tex. Transp. Code Ann. § 503.067(b) (2021), *repealed by* Act 2023, 88th Leg., ch. 668, § 32(7) (eff. July 1, 2025); *see also id.* § 503.094(1) (making it a Class C misdemeanor), *amended by* Acts 2023, 88th Leg., ch. 668, § 32(9) (eff. July 1, 2025). The suspected violation was enough to justify stopping Humble.

> 2.    Humble adequately pleaded that Carpenter violated clearly established law by using excessive force.

The complaint also alleges that Carpenter violated Humble's Fourth and Fourteenth Amendment rights by "violently slamm[ing] Ms. Humble to the ground with such force that she hit her face and head and lost consciousness ...." Dkt. 14 at 15. Carpenter argues that his use of force was justified because Humble had failed to cooperate with his instructions. Dkt. 24 at 15; *see also* Dkt. 47 at 5. But Humble's allegations—which must be taken as true—paint a different picture.

Claims "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To prevail on an

excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). "The court considers the totality of the circumstances, *i.e.*, (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Barnes v. Felix*, 152 F.4th 669, 674 (5th Cir. 2025) (quotation omitted). That fact-intensive analysis must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotations omitted).

Based on those factors, Humble has sufficiently pleaded an excessive force claim. The suspected crime—driving with an invalid plate—is a minor traffic infraction, which "substantially lower[s]" the need for force. *See Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017) (driving below the speed limit); *see also Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (speeding). The complaint also alleged both that she posed no threat while seated in her car, and that she did not "attempt to flee or resist." *See* Dkt. 14 at 12.

Carpenter's position that Humble's resistance prompted him to use force does not track the order of events detailed in the complaint. To be sure, the

18

complaint acknowledges that Humble initially refused to comply with Deputy Carpenter's order to get out of the car. *See id.* at 13-14. But Humble's sister, who had intervened, successfully persuaded Humble to step out. *See id.* at 14. Humble then exited the car "peacefully," without "attempt[ing] to flee" or "display[ing] any violence or resistance." *Id.* at 14.

At that point, Humble had *complied* with Deputy Carpenter's directive. Her lack of resistance eliminated any justification for using force. *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009) ("[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."). Yet the complaint asserts that Carpenter not only slammed her to the ground—with enough force to render her unconscious—but continued to kneel on her back for an unspecified period even after she was handcuffed. *See* Dkt. 14 at 14-15.

Well-established law reflects that it was unreasonable for Deputy Carpenter to use such force when Humble was no longer resisting and posed no threat. Whereas Carpenter merely lists cases where use of force was deemed permissible—without regard to their specific circumstances, *see* Dkt. 24 at 14-15—Humble cites on-point binding precedent finding the use of force was excessive and unreasonable on strikingly similar facts.

In *Hanks v. Rogers*, the court found it "obvious" that an officer had used excessive force. *See* 853 F.3d at 747. Like Humble, the plaintiff in *Hanks* was

19

stopped for a minor traffic infraction. *Compare* Dkt. 14 at 14 (Humble stopped for suspected invalid license tags), *with Hanks*, 853 F.3d at 745 (plaintiff stopped for driving below speed limit). Also like Humble, *see* Dkt. 14 at 13-14, the plaintiff did not immediately comply with the officer's directives but "made no attempt to flee." *See Hanks*, 853 F.3d at 742 (non-compliance with order to exit the vehicle and kneel). The officer in *Hanks* nevertheless struck the plaintiff, pushed him to the ground, and injured him, even though the plaintiff posed no immediate safety threat. *See id.* at 743, 745.

Reversing the district court's conclusion that the officer was entitled to qualified immunity, the Fifth Circuit explained in *Hanks* "that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Id.* at 747 (citing *Deville*, 567 F.3d at 167-69; *Doss v. Helpenstell*, 626 F. App'x 453, 459-60 (5th Cir. 2015); *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2016)). That is sufficiently similar to Humble's allegations to show that any reasonable officer in Deputy Carpenter's position should have known that his use of violent force against Humble was unlawful.

The conclusion is reinforced by another decision, *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). There, the court found it amply clear that an officer

20

"could not forcefully slam [a suspect's] face into a vehicle while she was restrained and subdued." *Id.* at 502 (holding that defendants failed to establish qualified immunity). The same principle fits this case, where Deputy Carpenter allegedly slammed a non-resisting Humble forcefully to the ground and continued to kneel on her after she was cuffed and unconscious. Carpenter's motion to dismiss the excessive force theory is denied.

>    3.    Qualified immunity bars the First Amendment theory against Deputy Carpenter.

The conclusion differs for Humble's theory that Deputy Carpenter violated her First Amendment rights by retaliating against her. Dkt. 14 at 32. Although Deputy Carpenter raised a qualified immunity defense with respect to that theory, Dkt. 24 at 15, Humble wholly failed to address it. Dkt. 46.

Even outside the qualified immunity context, "[a] plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *See Terry Black's Barbeque, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *see also McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) (characterizing this as "well-settled precedent"). That conclusion applies with especial force here because it is Humble's burden to overcome the qualified immunity defense. *See Willis v. Bastrop Cnty.*, 2019 WL 252051, at *5 (W.D. Tex. Jan. 17, 2019) (plaintiff failed to meet this burden "because he has failed to even respond to the qualified

immunity defense"). Yet nowhere does her response even mention the First Amendment theory, *see* Dkt. 16, thereby abandoning it. Her Section 1983 claim premised on any First Amendment violation is dismissed.

### C.    Humble has not stated plausible claims against Deputies Ramirez, Miller, and Crespin.

Humble also brings Section 1983 claims against Ramirez, Miller, and Crespin (collectively the "Remaining Deputies"). Dkt. 14 at 24. The Remaining Deputies assert qualified immunity from all claims. Dkt. 30 at 13; Dkt. 33 at 13; Dkt. 41 at 13.

The conclusions above foreclose most of Humble's claims against the other deputies. Because the initial traffic stop was valid, *see supra* Part II.B.1, Humble cannot show that any other deputy wrongfully stopped her. And because Humble failed to defend her First Amendment retaliation theory, that theory is abandoned with respect to all the Deputies. *See supra* Part II.B.3. Nor could the Remaining Deputies be derivatively liable as bystanders for any of Deputy Carpenter's actions that the Court has concluded did not violate Humble's clearly established constitutional rights. *See Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 245 (5th Cir. 2025) (bystander liability requires an underlying constitutional violation); *see also Buehler v. Dear*, 27 F.4th 969, 989 (5th Cir. 2022).

That leaves Humble's theory that the Remaining Deputies wrongfully failed to intervene during Deputy Carpenter's use of excessive force. Dkt. 14 at 24. The Remaining Deputies argue that Humble has alleged no facts showing they were present when unlawful force was applied or were otherwise aware of its use. Dkt. 47 at 6. They are right.

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Bystander liability attaches when an officer: "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

Bystander liability "requires more than mere presence in the vicinity of the violation;" courts must "also consider whether an officer acquiesced …." *Id.* at 343 (quotations omitted). Relevant considerations include how long the force was used, the bystanders' physical proximity to the officer who used force, their conduct in response to the use of force, and their prior training. *See, e.g., Timpa v. Dillard*, 20 F.4th 1020, 1039 (5th Cir. 2021) (officers trained in how to properly restrain subjects "stood mere feet away," laughed, and made jesting comments during a fourteen-minute restraint of an incapacitated arrestee);

23

*Hale*, 45 F.3d at 919 (officers "stood by and laughed" and "yelled encouragement" as another officer used excessive force).

To overcome qualified immunity, Humble primarily relies on an unpublished decision, *Greene v. DeMoss*, 2022 WL 3716201 (5th Cir. Aug. 29, 2022). *See* Dkt. 46 at 7. There, the plaintiff plausibly alleged bystander liability where the officers "watched" and personally participated in the use of excessive force for a period of almost thirty minutes while fellow officers beat an unresisting suspect. *Id.* at *4.

But Humble's allegations are far too sparse to show that any of the Remaining Deputies could be liable, let alone that their conduct violated clearly established law. At best, the complaint asserts that Ramirez, Miller, and Crespine "arrived at the scene" while Humble was unconscious and did not "move [] Carpenter off" her or otherwise intervene while he was kneeling on her back. Dkt. 14 at 15. It also pleads that "at least one" of the Remaining Deputies held Humble down as Carpenter kneeled on her. *See id.* at 15, 22. This is not enough to show that these Remaining Deputies acquiesced to Carpenter's use of force. Nothing indicates that any of those deputies were there long enough such that they should have known that the force applied was unreasonable. Likewise, the factual allegations do not reflect that the Remaining Deputies had a sufficient opportunity to prevent excessive force from being used. And the lack of factual detail makes it impossible to show

24

that their unspecified conduct violated clearly established law, whether as bystanders or otherwise.

Humble explains that she lacks further detail because she was face-down and regaining consciousness when Deputy Carpenter kneeled on her back. *See* Dkt. 14 at 15. She contends that "[f]urther details will have to be flushed out in discovery …." Dkt. 46 at 7. But Humble had access to information necessary to flesh-out her bystander claim. After all, her sister was right there at the scene. Her complaint even relies on her sister's actions and statements that reflect her sister's proximity to where Humble exited the car and was taken to the ground. *See* Dkt. 14 at 14, 16 (explaining how Tanny convinced Humble to get out of the car and then obtained Defendant Carpenter's permission to help Humble sit up after she was handcuffed). The fact that Humble chose to include some of her sister's observations, while omitting any facts describing the actions of the Remaining Deputies whom the sister would have plainly observed, is telling. Indeed, Humble had a duty to investigate those facts readily available to her before filing the complaint. *See* Fed. R. Civ. P. 11(b).

In short, Humble has not pleaded a plausible basis to conclude that the Remaining Deputies violated her rights. And Humble has not shown that their conduct, which she fails to adequately describe, rises to the level of violating clearly established law. Her claims against Deputies Ramirez, Miller, and Crespin are dismissed.

### III. __Humble's allegations against Harris County are deficient.__

Humble's Section 1983 claim against Harris County depends on *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny. *See* Dkt. 14 at 27. Harris County contends that the allegations are conclusory and fail to meet the *Monell* standard. *See* Dkt. 15. The County is correct. Other than citing general principles and incorporating passages in her complaint, Humble offers little in the way of response.[2] *See* Dkt. 27.

"[A] municipality cannot be held liable solely because it employs a tortfeasor ...." *Monell*, 436 U.S. at 691 (emphasis in original). "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (footnote omitted). To recover, a plaintiff must plausibly allege that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Martinez v. City of Rosenberg, Tex.*, 123 F.4th 285, 289 (5th Cir. 2024) (quotations omitted), *cert. denied*, 2025 WL 1727389 (U.S. June 23, 2025).

---

[2] Plaintiff filed an amended certificate of service regarding her response to the County's motion to dismiss, which for whatever reason is characterized on the docket sheet as a "motion." Dkt. 28. Because the amendment has already been filed without objection, the Court denies any "motion" to amend the certificate as moot.

Based on the disposition of Humble's other claims, the only potential basis for municipal liability concerns Deputy Carpenter's use of excessive force. For that claim, the complaint asserts, in somewhat disjointed fashion, that (1) the County's officers have a pattern of using excessive force, which the County has failed to address, *see* Dkt. 14 at 28-32; (2) the County has other official or unofficial policies or customs regarding hiring practices, use of special patrol units, and insurance that led to Deputy Carpenter's use of excessive force, *see id.* at 17, 19, 36, 37; and (3) the County failed to properly train its deputies, *see id.* at 17-18, 37-38. But as concluded below, those theories do not provide a plausible basis for municipal liability here.

### A.  Humble has not alleged a pattern of sufficiently similar excessive force incidents.

The complaint asserts that Harris County has "an official policy or custom of systemic unwillingness to address" its officers' use of excessive force.[3] Dkt. 14 at 28. Conclusory allegations that a custom or policy exists are insufficient to support municipal liability. *See Martinez*, 123 F.4th at 289. Instead, a plaintiff must sufficiently plead: (1) a written policy, (2) "a widespread practice that is so common and well-settled as to constitute a

---

[3] Humble also makes passing references to the County's "ratification" of the Deputies' conduct. Allegations that the County failed to change policies or customs that allegedly led excessive force to be used do not fit within any "extreme factual situation' where ratification applies." *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 n.48 (5th Cir. 2019) (rejecting ratification theory).

custom that fairly represents municipal policy," or (3) the rare circumstance where the official policymaker performed the act underlying the Section 1983 claim. *See Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (quotation omitted). A claim based on a widespread practice "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the *specific violation* in question." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added; internal quotation marks omitted); *see also Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents.").

Harris County argues that the examples mentioned in the complaint lack sufficient similarity and specificity to show a systemic practice or policy of failing to address excessive force. *See* Dkt. 15 at 8. The Court agrees. Incidents within the Harris County jail, *see id.* at 28-29 (DOJ memorandum "Investigations of the Harris County Jail"); *id.* at 29-30 (excessive force against inmates), involve an entirely distinct environment from the traffic stop here. *See Woods v. Harris Cnty.*, 2022 WL 18396216, at *12 (S.D. Tex. May 26, 2022) (rejecting reliance on same DOJ report and incidents in jails to substantiate municipal liability in non-jail setting), *adopted in relevant part by*, 2022 WL 22596773 (S.D. Tex. Aug. 22, 2022), *aff'd*, 2024 WL 1174185 (5th Cir. Mar. 19, 2024). Equally deficient is Humble's reference to a police dog biting someone

during a home raid in a 2011 suit, which not only bears no similarity to the traffic stop here, but did not lead to any finding that excessive force was used. *See* Complaint, *Prespentt v. Harris Cnty.*, No. 4:13-cv-1678, Dkt. 1 at 4-5 (S.D. Tex. June 18, 2013); Agreed Motion to Dismiss, *Prespentt*, Dkt. 28 (S.D. Tex. Jan. 30, 2015) (plaintiff's voluntary motion to dismiss with prejudice); Order of Dismissal, *Prespentt*, Dkt. 29 (S.D. Tex. Jan. 30, 2015).

Humble's declaration that there were "over 3000 excessive force allegations against Harris County in 2015" fares no better. Dkt. 14 at 29. Mere allegations do not constitute findings that excessive force was used, even in 2015. They also have no bearing on the County's actions eight years later when Humble was stopped. Humble's conclusory assertions, whether about 2015 statistics or other incidents in 2016 or 2017, "do not raise a right to relief above the speculative level." *See Verastique v. City of Dall., Tex.*, 106 F.4th 427, 432 (5th Cir. 2024) (quotation omitted) (rejecting pattern-or-practice allegations premised on incidents that were not described with adequate factual detail), *cert. denied*, 145 S. Ct. 772 (2024). Humble's pattern or practice theory is dismissed.[4]

---

[4] Humble also alleges that the County "has an official policy or unofficial custom of justifying" arrests without probable cause. *See* Dkt. 14 at 28. But she did not affirmatively plead that she was arrested in violation of the Fourth Amendment. Nor does she invoke such a claim in her responses.

Nothing in the complaint approaches the threshold for sustaining a related *Monell* claim against Harris County. Much like her excessive force argument, Humble fails

B.    **Humble inadequately pleaded deliberate indifference or causation with respect to Harris County's policies.**

In addition to asserting a pattern of excessive force, Humble insinuates that four other customs or policies are relevant: (1) Harris County's reliance on the Texas Commission on Law Enforcement's ("TCOLE") minimum standards for hiring, supervising, disciplining, and retaining deputies, Dkt. 14 at 30, 36-37, (2) its approach of hiring officers with only a high school-level education, *id.* at 18-19, 37, (3) its custom of not requiring deputies to obtain excessive force claim insurance, *id.* at 37, and (4) its use of special patrol units, called "jump-out-boys," *id.* at 17. Even assuming that these are actionable policies or customs, Humble does not satisfy other requirements for municipal liability.

One of these hurdles is deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). This degree of culpability exceeds mere negligence or even gross negligence; "it must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cnty.*,

---

to allege instances of sufficiently similar or specific conduct to plausibly support the existence of a pattern of justifying unlawful arrests.

577 F.3d 612, 617-18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

There must also be a direct causal link between the municipal policy and the violation at issue. *See James*, 577 F.3d at 617; *Piotrowski*, 237 F.3d at 580. To survive dismissal, the complaint must articulate specific facts supporting that causal relationship. *See Henderson v. Harris Cnty., Tex.*, 51 F.4th 125, 130 (5th Cir. 2022); *see also Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 615 (W.D. Tex. 2023) (conclusory allegations attempting to link the city's failure to implement body-worn cameras with plaintiff's injury were inadequate). Pleading both deliberate indifference and causation is crucial to ensure that municipal liability does not devolve into respondeat superior liability. *See James*, 577 F.3d at 618; *Bd. of Cnty. Comm'rs*, 520 U.S. at 415.

Humble's allegations come nowhere close to meeting those standards. She claims that it is "well known and accepted" that both "training and oversight deficiencies" and hiring deputies with only a high school-level education lead to "increased rates of excessive force." *See* Dkt. 14 at 30, 18. Those bare assertions do not plausibly suggest that the County's hiring and training standards caused Deputy Carpenter to use excessive force.

Humble's allegation that Harris County's special patrol units (called "jump-out boys") operate without adequate oversight, *id.* at 17-18, is even less connected to her claims. She offers no facts suggesting that Deputy Carpenter

was part of one of those units, such that they could even be relevant to what occurred. *Cf. Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (dismissing municipal liability claims where the cited policy was "not implicated" by the plaintiff's circumstances). And Humble offers neither facts nor argument indicating that the County's policy of not requiring deputies to obtain insurance coverage for excessive force claims caused the violation she alleges. *See* Dkt. 14 at 37. Indeed, that is far too attenuated on its face. Humble cannot rely on any supposed policy to support her claim.

### C.    The failure to train allegations are also insufficient.

As a final theory, the complaint alleges that Harris County failed to adequately train its deputies. *See* Dkt. 14 at 17, 19, 38. This theory is deficient.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." *Connick*, 563 U.S. at 61. But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378,

390-91 (1989). "And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. Permitting failure-to-train cases to move forward on a "lesser standard of fault would result in de facto respondeat superior liability on municipalities—a result [the Supreme Court] rejected in *Monell*." *Id.* (citing *Monell*, 436 U.S. at 693-94).

To sustain a failure-to-train theory, a plaintiff must plead "that (1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (quoting *Davidson*, 848 F.3d at 397). But Humble makes only conclusory allegations about the Deputies' training and the causal link between that training and the violation pleaded. *See, e.g.,* Dkt. 14 at 17 (the "unconstitutional conduct is a result of failure to train"). The complaint does not identify *what* made the training inadequate. Merely claiming that training was subpar does not show deliberate indifference. *See Armstrong*, 60 F.4th at 277. Moreover, "[t]hat a particular officer may be unsatisfactorily trained" does not establish causation between that officer's conduct and the training he received. *See City of Canton*, 489 U.S. at 390-91. Nothing in the complaint bridges that that critical gap. Humble's failure-to-train theory is barred.

33

In sum, Humble has not plausibly stated any theory under which Harris County can be liable. Her claims against the County are dismissed.

### Conclusion

For the foregoing reasons, it is **ORDERED** that Steven Lamar Carpenter Jr.'s motion to dismiss (Dkt. 24) be **GRANTED IN PART and DENIED IN PART**. Humble's theories under 42 U.S.C. § 1983 that Deputy Carpenter unconstitutionally stopped her car and violated her First Amendment rights are **DISMISSED WITH PREJUDICE**. But Humble's excessive force claim against Carpenter survives dismissal.

It is further **ORDERED** that the motions to dismiss filed by Defendants Omar Ramirez, Bryant Crespin, and Adrian Miller (Dkt. 30; Dkt. 33; Dkt. 41), and by Defendant Harris County (Dkt. 15) be **GRANTED** in full, and all claims against those defendants be **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Humble's motion (Dkt. 28) to amend the certificate of service in her response to the County's motion to dismiss is **DENIED AS MOOT**.

Signed on January 14, 2026, at Houston, Texas.

_____

Yvonne Y. Ho
United States Magistrate Judge